UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ROBERT D. SANGO,

                Plaintiff,                              Case No. 1:14-cv-344

v.                                                     Honorable Robert J. Jonker

UNKNOWN MINIARD et al.,

                Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Factual Allegations**

Plaintiff Robert D. Sango presently is incarcerated with the Michigan Department of Corrections at the Ionia Correctional Facility, though the actions about which he complains occurred while he was housed at the Oaks Correctional Facility (ECF). In his amended complaint, Plaintiff sues the following ECF employees: Resident Unit Manager (RUM) (unknown) Miniard; Assistant RUM (ARUM) Ronald Grambau; Correctional Officer (unknown) Riggs; and Administrative Assistant Eric Smith.[1]

Plaintiff alleges that, although he is a security-level-two prisoner, he was transferred to ECF, which is a level-four facility, so that he could participate in the strict-vegetarian-menu program provided at ECF. Plaintiff allegedly was told that ECF was adding some level-two housing, and that Plaintiff would be assigned to that housing when it became available. Plaintiff allegedly asked Defendant Grambau about when he would be moved to level two, and Grambau told Plaintiff that he had a "reputation," which, according to Plaintiff, was a reference to Plaintiff's litigiousness. Plaintiff filed a grievance against Grambau, citing his remark. Grambau called Plaintiff into his office, and, in the presence of Defendant Riggs, asked Plaintiff to sign off on the grievance. Plaintiff declined.

According to the amended complaint, Defendant Riggs had been writing misconduct tickets against Plaintiff's cell-mate, prisoner Sharpley, advising Sharpley that, if he wanted the misconduct tickets to stop, he should handle Plaintiff "the old school way. . . ," which Plaintiff interpreted to mean that Sharpley should stab Plaintiff. (Am. Compl., docket #10, Page ID#19.)

---

[1] In his initial complaint, Plaintiff sued two additional Defendants, whom he dropped from the action when he filed his amended complaint.

Sharpley told Plaintiff, and both Plaintiff and Sharpley wrote grievances and contacted their families. Plaintiff's mother and Sharpley's mother both called the prison, attempting to speak with the warden. Defendant Smith allegedly provided unspecified, false information to both women. Plaintiff wrote to Defendant Smith, requesting an investigation, but Smith did not answer Plaintiff's communication. Thereafter, Defendant Miniard interviewed Sharpley on his grievance, offering to transfer Sharpley back to his old unit and reinstate his job if Sharpley signed off on his grievance against Riggs. In the interim, Plaintiff had been transferred to the other side of the unit. Plaintiff showed Miniard a declaration signed by Sharpley and asked Miniard to investigate. Miniard did not conduct an investigation, and he subsequently transferred Sharpley to the St. Louis Correctional Facility, where Miniard had previously worked.

Plaintiff seeks nominal, compensatory and punitive damages.

## Discussion

### I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

To the extent that Plaintiff complains about actions or inactions by any Defendant respecting prisoner Sharpley or respecting Plaintiff's and Sharpley's mothers, his claims will be dismissed. Plaintiff lacks standing to assert the constitutional rights of others. *Newsom v Norris*, 888 F.2d 371, 381 (6th Cir. 1989); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992). As a layman, Plaintiff may only represent himself with respect to his individual claims, and may not act on behalf of other prisoners. *See O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973); *Lutz v. LaVelle*, 809 F. Supp. 323, 325 (M.D. Pa. 1991); *Snead v. Kirkland*, 462 F. Supp.

914, 918 (E.D. Pa. 1978). Federal law specifies that cases in the courts of the United States may be conducted only by the parties personally or through counsel. 28 U.S.C. § 1654. That statute provides that, "in all courts of the United States, the parties may plead and conduct *their own cases* personally or by counsel, as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." 28 U.S.C. § 1654 (emphasis added). The statute clearly makes no provision for a *pro se* party to represent others. The federal courts have long held that section 1654 preserves a party's right to proceed *pro se*, but only with respect to his own claims. Only a licensed attorney may represent other persons. *See Rowland v. Calif. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-03 (1993); *United States v. 9.19 Acres of Land*, 416 F.2d 1244, 1245 (6th Cir. 1969). As a consequence Plaintiff's complaint's about any Defendant's conduct involving prisoner Sharpley or involving the mothers of Plaintiff and Sharpley will be dismissed.

Other than his complaints about Defendant Smith's handling of telephone calls from Plaintiff's and Sharpley's mothers, Plaintiff alleges only that Smith failed to conduct an investigation in response to Plaintiff's grievances about the telephone calls. Similarly, other than his complaint about Sharpley's transfer, Plaintiff alleges only that Defendant Miniard failed to conduct an investigation requested by Plaintiff. Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Accordingly, Plaintiff fails to state a claim against Defendants Smith and Miniard for failing to initiate or investigate grievances.

Further, Plaintiff's allegations against Defendant Grambau fall far short of alleging a constitutional claim. Plaintiff alleges that Defendant Grambau told Plaintiff that he had a reputation, presumably referring to Plaintiff's history of filing grievances and lawsuits.

Plaintiff appears to suggest that Defendant Grambau retaliated against Plaintiff for exercising his First Amendment rights. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith*, 250 F.3d at 1037. Plaintiff's allegations therefore are sufficient to allege the first element of a retaliation claim. Plaintiff, however, fails entirely to allege conduct that could be considered adverse action. Plaintiff makes no allegation that Grambau threatened him in any way or took any other action against him. Grambau's comment, standing alone, did not amount to adverse action. As a consequence, Plaintiff fails to state a retaliation claim against Defendant Grambau.

Moreover, Plaintiff's sole allegation against Defendant Riggs is extremely limited. He alleges that Defendant Riggs told prisoner Sharpley that, if he wanted to stop receiving

misconducts, Sharpley should "handle [Plaintiff] 'the old school way.'" (Am. Compl. at 3, Page ID#19.)  Plaintiff suggests that Riggs' statement was an instruction for Sharpley to stab Plaintiff. He appears to argue that the statement placed Plaintiff's life or health at risk, in violation of the Eighth Amendment.

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958).  The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346.  Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*  Moreover, in its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)).  To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, plaintiffs must show that the prison officials acted with "deliberate indifference" to a substantial risk that the defendant would cause prisoners serious harm.  *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001).

The concept of "deliberate indifference" encompasses both a subjective and an objective component. *Curry*, 249 F.3d at 506. The objective component requires that the deprivation alleged be "sufficiently serious." *Id.* (citing *Farmer*, 511 U.S. at 834). To satisfy the subjective component, plaintiffs must show that the prison officials had "a sufficiently culpable state of mind." *Id.* (citation omitted). A "sufficiently culpable state of mind" is one in which "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison official can be liable if he "disregards that risk by failing to take reasonable measures to abate it." *Id.* at 848.

Defendant Riggs' comment to Sharpley is insufficient, standing alone, to demonstrate either component of the deliberate indifference standard. Allegations of verbal harassment or threats by prison officials toward an inmate ordinarily do not constitute punishment within the meaning of the Eighth Amendment. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). Moreover, the remainder of the complaint indicates that no reasonable probability existed that Sharpley would take up Riggs' suggestion. At the time of the comment, Sharpley was both friendly with and acting in collaboration with Plaintiff on their joint complaints against staff. In these circumstances, the fact that Riggs made the comment to Sharpley does not demonstrate either that Plaintiff was objectively exposed to "a substantial risk of serious harm" or that Riggs subjectively understood that he was placing Plaintiff at such risk. *Farmer*, 511 U.S. at 837. As a consequence, Plaintiff fails to sufficiently allege that Riggs was aware that his statement would cause an obvious, substantial risk to Plaintiff's safety.

Plaintiff's amended complaint makes no mention of any state-law claim against any Defendant. Plaintiff, however, has filed a motion (docket #5) seeking supplemental jurisdiction over

such claims, indicating that Defendants were negligent and failed to follow prison policies.

Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). As a result, any assertion that Defendants violated state law would fail to state a claim under § 1983. Moreover, to the extent that Plaintiff asks this Court to exercise its supplemental jurisdiction over an unspecified supplemental state-law claim, the motion is denied. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id*. Because the Court has dismissed all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over any supplemental state-court claims. Accordingly, Plaintiff's motion for supplemental jurisdiction will be denied as moot.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the

$505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated:      June 10, 2014            /s/ Robert J. Jonker
                                     ROBERT J. JONKER
                                     UNITED STATES DISTRICT JUDGE