UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT D. SANGO,

        Plaintiff,

Case No. 1:14-cv-344

Hon. Robert J. Jonker

v.

UNKNOWN MINIARD, *et al.*,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

        This is a *pro se* action brought by a state prisoner in the custody of the Michigan Department of Corrections (MDOC). This matter is now before the Court on defendant Rigg's motion for summary judgment (docket no. 33) and plaintiff's first and second motions for sanctions (docket nos. 40 and 44).

        **I.**      **Plaintiff's complaint**

        This matter is on remand from the Sixth Circuit Court of Appeals. *See Sango v. Miniard*, No. 14-1813 (6th Cir.) (Order) (Feb. 20, 2015) (docket no. 24). Plaintiff's sole remaining claim is against defendant Riggs, a corrections officer at Oaks Correctional Facility (ECF). The Sixth Circuit summarized plaintiff's claims, which are set forth in his amended complaint, as follows:

> Sango alleged that Grambau told him that he had a "reputation" for being litigious. Sango filed a grievance as a result. Grambau and Riggs asked Sango to "sign off [on] the grievance," which Sango refused to do. Sango further alleged that Riggs repeatedly issued Sango's cellmate, Antonio Sharpley, misconduct tickets, and that Riggs told Sharpley that if he wanted Riggs to stop, Sharpley would have to handle Sango "the old school way," which Sango contends meant that Sharpley had to stab Sango. Sharpley and Sango contacted their families. Sango contends that Sharpley's

mother contacted the prison, that Grambau hung up on her and refused to investigate or take corrective action, and that Smith gave her false information. Sango asserts that he wrote to Smith, who did not respond, investigate, or take corrective action. At some unspecified time, Sango was moved "to the other side of the unit." Sango also contends that Miniard made a deal with Sharpley, in which Sharpley agreed not to cooperate with an investigation. When Sango showed Miniard a "declaration" provided by Sharpley asking Miniard to investigate, Sharpley was transferred to another prison, and Miniard did not perform an investigation or take corrective action.

*Id.* at PageID.88-89).

The Sixth Circuit affirmed this Court's dismissal of plaintiff's complaint in all respects except for the retaliation claim against defendant Riggs:

> To state a First Amendment retaliation claim under § 1983, a prisoner must allege that "(1) [he] engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two -- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (citations omitted). Protected activities include a prisoner's filing of grievances and participation in civil lawsuits. *Scott v. Stone*, 254 F. App'x 469, 472 (6th Cir. 2007); *King v. Zamiara*, 150 F. App'x 485, 491–92 (6th Cir. 2005). An adverse action is one that would deter a person of ordinary firmness from exercising his rights and includes physical threats of violence. *Thaddeus-X*, 175 F.3d at 396, 398.
>
> Riggs' request to Sharpley, that he handle Sango "the old school way" (i.e. stab him), is a physical threat that Sango alleges was made in response to his litigious reputation and habit of filing grievances against prison staff. Giving Sango's *pro se* complaint a liberal construction and accepting his allegations as true, he has stated a First Amendment retaliation claim against Riggs.
>
> Accordingly, the district court's judgment is reversed with respect to Sango's First Amendment retaliation claim against Riggs.

*Id.* at PageID.89-90. In a later declaration, plaintiff stated that these events occurred in 2012, specifically that defendant Riggs attempted to have prisoner Sharpley stab him in August 2012. *See* Sango Decl. (docket no. 36-1)

### II. Defendants' motion for summary judgment

### A. Legal standard

Defendant seeks summary judgment on the ground that plaintiff failed to exhaust his administrative remedies with respect to this retaliation claim. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

>   B.   **Failure to Exhaust**
>
>   1.   **Exhaustion requirement**

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

>   2.   **MDOC Grievance process**

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved,

then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff.  *Id.* at ¶¶ P and R.  The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original).  The prisoner must send the Step I grievance to the appropriate grievance coordinator.  *Id.* at ¶ V.  If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator.  *Id.* at ¶ BB.  Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section.  *Id.* at ¶ FF.

        **3.    Plaintiff did not properly exhaust the claims alleged in the complaint**

Defendant Riggs has submitted records from the MDOC which reflect that plaintiff filed two Step III grievance appeals while incarcerated at ECF.  *See* Jordan Garza Aff. (docket no. 34-3, PageID.133); MDOC Prisoner Step III Grievance Report ("Grievance Report") (docket no. 34-3, PageID.134-144).  However, neither of these grievances involved plaintiff's present claim that defendant Riggs retaliated against him.  *See* Grievance ECF-12-08-2578-27b (directed at former defendant ARUS Grambau regarding disputes on August 8, 2012, regarding plaintiff's transfer to a different cell block, with Grambau being aggressive and stating that plaintiff had a "reputation" which affected his placement) (docket no. 34-3, PageID.154-162); Grievance ECF-12-08-2597-17b (complaint regarding meeting with ARUS Grambau on August 16, 2012, in the presence of CO

5

Riggs, regarding documentation in plaintiff's prison file that he engaged in sexual misconduct, that Grambau said plaintiff had a "reputation," and that Grambau's statement was intended "to degrade" plaintiff and "to cause a verbal confrontation") (docket no. 34-3, PageID.145-153). Based on the Grievance Report, plaintiff did not properly exhaust any grievances with respect to his remaining retaliation claim against defendant Riggs.

In his response and motions for sanctions, plaintiff contends that he completed the grievance process with respect to his retaliation claim against defendant Riggs, but that "Defendants (in conspiracy) removed the response of the Step III grievance and appeals section and related documents, then removed the entries from their docket (MDOC Prisoner Step III Grievance Report) . . . " Plaintiff's Response (docket no. 36, PageID.164).

Plaintiff also filed a declaration stating that: in "August 2012" he filed a grievance against defendant Riggs to pressure prisoner Sharpley to stab plaintiff; that no one responded to his Step III appeal; that in "January 2013" officers engaged in a conspiracy removed all documents in his cell related to defendant Riggs; and that "MDOC Staff are bringing drugs into prison to creat [sic] violence so they can stop government agencies from cutting funding due to violence." Plaintiff's Declaration (docket no. 36-1). In support of plaintiff's claim that he exhausted grievances against Riggs, plaintiff has submitted a copy of a disbursement authorization from the correctional facility, dated September 25, 2012, which reflects a disbursement for mailing "Step III grievances to CFA Classification Director Laura S. Heinritz. *See* Disbursement Authorization (docket no. 36-2, PageID.174). The four "Step III grievances" are identified as 2012-08-2579-03f, 2012-08-2598-27B, 2012-08-2623-28B, and 2012-08-2580-28B (hereinafter referred to as grievance nos. 2579, 2598, 2623 and 2580). *Id.* Plaintiff does not provide copies of any of the grievances, does not describe

the content of the grievances and does not state whether he was attempting to file the grievances directly at Step III.[1]  In summary, plaintiff contends that defendants engaged in a conspiracy to alter the Step III Grievance Report to show that his claims were not exhausted.

In his reply, defendant acknowledged that none of the Step III appeals mailed on September 25, 2012 appear on the Grievance Report.  *See* MDOC Prisoner Step III Grievance Report.  However, defendant points out that plaintiff mailed the Step III appeals to the wrong person.  It is undisputed that plaintiff arranged to have these documents mailed to CFA Classification Director Heinritz.  Defendant points out that MDOC Policy Directive 03.02.130 ¶ FF requires that Step III appeals are to be sent to the Grievance and Appeals Section.  *See* Policy Directive 03.02.130 ¶ FF (providing in pertinent part, "[t]o file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form (CSJ-247B), to the Grievance and Appeals section").  For this reason, defendant asserts that plaintiff did not properly exhaust the Step III appeals.

In plaintiff's first "motion for sanctions," which is essentially a sur-reply brief to the motion for summary judgment, plaintiff stated that there is an error in the grievance report with respect to another grievance, SLF-13-07-0882-17a ("882") which states that the Step III appeal was received on September 1, 2012, but the identifier is for a 2013 grievance and that a note reflects that the grievance was returned to plaintiff on October 11, 2013.  *See* Grievance Report (docket no. 40-1, PageID. 189).  In summary, plaintiff claims that the reference to September 1, 2012 is evidence that the earlier entries from 2012 were removed from the Grievance Report.  In response to the motion

---

[1] If plaintiff was attempting to file the grievances directly at Step III, then this would be improper.  *See* discussion, *infra*.

for sanctions, defendant suggests that based on the record, it appears that plaintiff filed grievance 882 in July 2013 (pointing out that the numbers "13-07" in the grievance number referred to the year and month that the grievance was received), and that the notation of September 1, 2012 appears to be a clerical error.

In his "second motion for sanctions," plaintiff replies to defendant's response and asks the Court to hold defendant's counsel in contempt for statements made in the response. Plaintiff points out that regardless of where he mailed the Step III grievances, "they would have been given to the proper section." Second motion for sanctions (docket no. 44, PageID.198). Plaintiff points out that the Step II appeal form states that a Step III appeal should be sent "to the Director's Office, P.O. Box 30003, Lansing, Michigan, 48909." *See* Step II appeal form (docket no. 44-3). Plaintiff then presented a copy of a disbursement authorization dated June 29, 2015, in which he sent a grievance to "Legal Affairs, MDOC, PO Box 30003 Lansing, MI 48909." *See* Disbursement Authorization (June 29, 2015) (docket no. 44-4). Plaintiff claims that because the MDOC acknowledged receipt of this grievance which he improperly addressed to "Legal Affairs", it was evidence of a "common practice" at the MDOC that such documents would be forwarded to the correct office. *See* Exhibits (docket nos. 44-5, 44-6, 44-7 and 44-8). In short, plaintiff contends that even if he filed a grievance incorrectly, it is the MDOC's responsibility to correct those errors.

Viewing this record in the light most favorable to plaintiff (the non-moving party), the Court concludes that there is no genuine issue of material fact with respect to whether plaintiff properly exhausted a grievance against defendant Riggs. MDOC records do not reflect that plaintiff properly exhausted a grievance against defendant Riggs with respect to the alleged retaliation. While plaintiff claims that he filed four grievances against Riggs, he has not provided any information with

respect to the substance of the missing grievances (2579, 2598, 2623 and 2580). Even if the Court accepts plaintiff's assertions that those four grievances were related to his claim against Riggs and that MDOC employees erased all evidence of the four grievances from the Step III Grievance Report, plaintiff did not mail the grievances to the Director's Office as required by the policy directive. Plaintiff's disbursement authorization reflects that the grievances were addressed to "CFA Classification Dir. Laura S. Heinritz." Unlike plaintiff's June 29, 2015 grievance, which was mailed to the correct PO Box 30003, there is no evidence that the Step III appeals at issue were mailed to the correct PO Box. Based on this record, plaintiff did not properly exhaust any grievances with respect to his retaliation claim against defendant Riggs. *See Jones,* 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, defendant's motion for summary judgment should be granted.

### IV.     Motions for sanctions

Finally, the undersigned finds no basis for an award of sanctions against defendant. The gist of plaintiff's motions is that defendant's counsel knowingly presented altered documents to the Court in support of defendant's motion for summary judgment. Specifically, that defendant's counsel altered the Step III Grievance Report. Plaintiff relies on Fed. R. Civ. P. 11, which provides in pertinent part that "By presenting to the court a pleading, written motion, or other paper -- whether by signing, filing, submitting, or later advocating it -- an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation . . . (3) the factual contentions have evidentiary support . . ." Fed. R. Civ. P. 11(b)(1) and (3).

"[T]he central purpose of Rule 11 is to deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).  Fed. R. Civ. P. 11(c) permits the Court to impose sanctions against an attorney or party who has filed and signed a pleading, motion or other paper if it was filed for any improper purpose and it had no basis in law or fact.  *Hartleip v. McNeilab, Inc.*, 83 F.3d 767, 778 (6th Cir.1996). "The test for the imposition of Rule 11 sanctions is whether the individual's conduct was reasonable under the circumstances." *Id.* "[T]he relevant inquiry is whether a specific filing was, if not successful, at least well founded." *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 553 (1991).  *See First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510, 517 (6th Cir. 2002) (to succeed on a motion for sanctions under the rule, the movant must show that the offending party engaged in "objectively unreasonable conduct"); *Bynum v. Michigan State University*, 117 F.R.D. 94, 100 (W.D. Mich. 1987) ("Rule 11 mandates the imposition of sanctions on a finding that a pleading certified to be true by the signature of an attorney or her client, is not well grounded in fact").  Finally, the Court's imposition of sanctions for Rule 11 violations is discretionary, not mandatory. *Hartleip*, 83 F.3d at 778.  If the Court determines that Rule 11 has been violated, the it may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Fed. R. Civ. P. 11(c)(1).

Before a party seeks sanctions under Rule 11, he  must give the offending party an opportunity to correct the alleged violation.  This procedure, sometimes referred to as the  "safe harbor filing requirement," [2] is set forth in Rule 11(c)(2).  Here, it appears that plaintiff sent a "safe

---

[2] *See First Bank of Marietta*, 307 F.3d at 510.

harbor" letter to defendant's counsel claiming that "Grievance enteries [sic] were removed from the MDOC Prisoner III Grievance Report[s]." *See* Plaintiff's Letter (docket no. 40-1, PageID.192).

Based on this record, the Court does not find sanctions appropriate. Defendant's counsel signed a motion for summary judgment on the ground that plaintiff failed to properly exhaust his claims. Plaintiff points out an apparent inconsistency on the Grievance Report, which he claims is due to a conspiracy at the MDOC and which defendant claims is a clerical error. Even if the Court accepts plaintiff's version of events, there is no evidence that defendant's counsel's decision to bring this motion for summary judgment was unfounded or objectively unreasonable. As discussed, there is no evidence that plaintiff filed a grievance against defendant Riggs and that he properly exhausted the grievance through Steps I, II and III. All that plaintiff has demonstrated is that on September 25, 2012, he obtained a disbursement authorization to mail four Step III appeals to the wrong MDOC official. Accordingly, plaintiff's motions for sanctions should be denied.

### V. Recommendation

For these reasons, I respectfully recommend that defendant's motion for summary judgment (docket no. 33) be **GRANTED**, that plaintiff's first and second motions for sanctions (docket nos. 40 and 44) be **DENIED** and that this action be **TERMINATED**.

Dated: February 8, 2016    /s/ Ray Kent
                           Ray Kent
                           United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).